UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X    Docket#
UNITED STATES OF AMERICA,      :    01-cr-1336(ERK)
                               :
     - versus -                :    U.S. Courthouse
                               :    Brooklyn, New York
BLAS SALVATORE MANGIAVILLANO,  :
              Defendant        :    May 8, 2009
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE EDWARD R. KORMAN
UNITED STATES DISTRICT JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Government:**          **Benton Campbell, Esq.**
                                 United States Attorney

                      BY:        **Greg Andres, Esq.**
                                 **Jacqueline Rasulo, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201

**For the Defendant:**           **Darryl Paster, Esq.**

**Official Transcriber:**        **Rosalie Lombardi**
                                        **L.F.**

**Transcription Service:**       **Transcription Plus II**
                                 3859 Tiana Street
                                 Seaford, N.Y.  11783
                                 (516) 358-7352
                                 Transcriptions2@verizon.net

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

**Proceedings**

1          THE CLERK:  United States v. Blas Salvatore

2  Mangiavillano, docket number 00-cr-824 and 01-cr-1336.

3          Your appearnces, counsel.

4          MR. ANDRES:  Greg Andres and Jackie Rasulo for

5  the United States.

6          Good afternoon, your Honor.

7          MR. PASTER:  Darryl Paster for the defendant.

8          Good afternoon, your Honor.

9          THE COURT:  Who took the plea in this case?

10         MR. ANDRES:  Judge Gold.

11         THE COURT:  Any resaon why I should not accept

12  -- there is more than one plea, I guess.

13         THE CLERK:  There is, Judge.

14         THE COURT:  So it's a plea in --

15         MR. ANDRES:  There were three pleas, Judge.

16         THE COURT:  Three pleas.  Well, let's get the

17  nubmers down so we have it.  Is it 00-cr-824?

18         THE CLERK:  Yes.

19         MR. ANDRES:  It's 00-cr-824, 01-cr-1336, and

20  there were --

21         THE CLERK:  Multiple please in 1336?

22         MS. RASULO:  Two pleas and one cooperation

23  agreement.

24         MR. ANDRES:  Yes.

25         MS. RASULO:  Yes.

3

**Proceedings**

1          MR. ANDRES:  Two pleas in 1336 and one plea in

2    824.

3          THE COURT:  Okay.  All right.  I adopt the

4    recommendation of the -- Judge Gold took the pleas in all

5    cases?

6          THE CLERK:  Yes.

7          THE COURT:  I adot the recommendation of the

8    magistrate that the pleas were knowingly and voluntarily

9    entered by the defendant with a full understanding of his

10   rights and the consequences of the plea.  There's a

11   factual basis for the plea.  I therefore accept the pleas

12   of guilty.

13         Mr. Mangiavillano, have you had an opportunity

14   to read this presentence report?

15         THE DEFENDANT:  Yes, I did, your Honor.

16         THE COURT:  Okay.  I am ready to hear you.

17         MR. PASTER:  Your Honor, if -- just adressing

18   the question of the guideline computation --

19         THE COURT:  Yes.

20         MR. PASTER:  On page 32 of the presentence

21   report in paragraph 126, it states that Mr. Mangiavillano

22   received minus three points for acceptance of

23   responsibility.  It's our memory better than our

24   contention that there was a global plea in one of the

25   cases, in which case he would have been entitled to an

4

**Proceedings**

1   additional point for acceptance of responsibility.  And

2   that that would be our only comment on the --

3              THE COURT:  What paragraph are we talking

4   about?

5              MR. PASTER:  Paragraph 126, sir.

6              THE COURT:  That's of the 2006 --

7              MR. PASTER:  Yes, sir.

8              THE COURT:  -- probation report.

9              MR. ANDRES:  That is accurate, Judge.  And part

10  of the 1336 case, there was a global plea and all of the

11  defendants including Mr. Magiavillano pled guilty to that

12  prior to Mr. Mangiavillano cooperating.

13             THE COURT:  Okay.  So he gets an extra point

14  off; is that?

15             MR. ANDRES:  Yes, Judge.

16             THE COURT:  I don't know how does that effect

17  the overall guideline calculcation?  It becomes a 32 on

18  the total offense level but --

19             MR. ANDRES:  Yes, Judge.

20             THE COURT:  And what is the guideline range?

21             THE CLERK:  32 criminal history category six is

22  210 to 262 months.

23             MR. PASTER:  I think it's four.

24             MR. ANDRES:  You think it's --

25             MR. PASTER:  No, it's four.  It's four.  Four.

5

**Proceedings**

1    It's four.  Here it is.  Greg, right here.

2            THE CLERK:  Four?  32 and a four is 168 to 210.

3            THE COURT:  Okay.  Do you want to speak?

4            MR. PASTER:  Your Honor, I actually sent the

5    Court a letter which I hope the Court is in receipt of.

6            THE COURT:  I may have stopped after I read the

7    government's letter.

8            MR. PASTER:  Certainly.

9            THE COURT:  Is this it, December 3, 2008?  No.

10           MR. PASTER:  No, sir, December 7 -- I'm sorry,

11   May 7, 2009.

12           THE COURT:  I don't think I got it yet.  That

13   was yesterday, wasn't it?  No, I don't think I have it.

14   Okay.  Is this an extra copy?

15           MR. PASTER:  That's fine, Judge.

16           THE COURT:  Okay.

17           MR. PASTER:  Your, I have very little to add to

18   what I have said in my letter and to what the government

19   has said in the 5k application.  Quite frankly, I think

20   there is very little I can say.

21           The only thing that I would like to assert to

22   the Court is that while Mr. Mangiavillano's conduct in

23   cooperating is very extensive, I think that it is

24   reasonable to draw the inference from that cooperation,

25   that the man has had a sincere change of heart in therms

6

**Proceedings**

1    of his orientation towards society and the law.  I have

2    had numerous opportunitites to talk with him on the

3    telephone and I can assure you that he has expressed to

4    me, and I am sure legitimately feels that he has changed

5    the direction of his life and simply doesn't want to be

6    involved in crime any further.  And if the Court sees fit

7    to give him the opportunity to live in society, I think

8    the Court could have a high degree of confidence that he

9    would do so without causing further violations of the

10   law.

11          MR. ANDRES:  Judge, just briefly,

12   Mr. Mangiavillano's cooperation as outlined in the May 6,

13   2009 letter to the Court has been spectacular and that

14   cooperation has been detailed in letters as I noted but I

15   wanted to also note for the record and for your Honor,

16   Judge, that there are several people who are here today

17   including John Buretta, who is the chief of the organized

18   crime section, Special Agents Peale and Otto (ph.) who

19   were the handling agents for Mr. Mangiavillano, as well

20   as Jerry Conrad (ph.) who is the supervisory special

21   agent in charge of the Gambino squad.

22          Joey Lipton, who is the AUSA who was largely in

23   charge of Mr. Mangiavillano's cooperation is here, as

24   well and I would like to have him speak and there was

25   also -- there's also been input from Assistant United

7

**Proceedings**

1   States Attorneys in the Southern District of New York

2   relating to Mr. Mangiavillano's cooperation becausse he

3   has cooperated with them, as well and in fact testified

4   in the southern district on at least one occasion.

5        Judge, with respect to the substance of his

6   cooperation, as I noted, Mr. Mangiavillano has been

7   involved in solving dozens of crimes for the government,

8   has cooperated against substantial figures in organized

9   crime in a variety of different organized crime families.

10  We've used his information extensively.  He's testified

11  extensively, always extremely credibly.  It's noteworthy,

12  as well that he has also provided the government with

13  information that was used to exculpate a defendant in

14  Brooklyn Supreme Court who was charged with a murder that

15  he did not commit and Mr. Mangiavillano came forward and

16  we were able to provide that information to the releant

17  authorities.

18        As I said, I am going to ask Mr. Lipton to talk

19  a little bit more about his cooperation but I also wanted

20  to talk about the criminal conduct to which he pled

21  guilty, Judge.  The most serious crimes that

22  Mr. Mangiavillano pled guilty to, the two murder

23  conspiracies that he was involved in, neither of which

24  ultimately led to the murder of the target, the

25  government had absolutely  no information about either of

8

### Proceedings

1  those murder conspiracies until Mr. Mangiavillano came

2  forward.  That is the crimes that he himself pled giulty

3  to, he was not under investigation for those crimes and

4  we were not even aware of their existence.  Those are

5  crimes that Mr. Mangiavillano during his early -- in

6  fact, immediately during his first proffer session

7  disclosed to the government and so in a real sense, his

8  cooperation has added to his exposures, criminal

9  exposure, because again he was not being investigated for

10 either of those crimes.  I think that's particularly

11 important.

12         Judge, I would just ask now that Mr. Lipton,

13 former AUSA Joey Lipton, come forward and just detail a

14 little more of the specifics of the cooperation, Judge.

15         MR. LIPTON:  Thank you, Judge.  I had the

16 opportunity to put Mr. Mangiavillano on the stand in

17 three casess -- two cases; yes, and prepare him for

18 others.  Mr. Mangiavillano is probably one of the

19 smartest, most hard working and active participants in

20 the cooperation process that I have dealt with and

21 possibly that in talking to other people, that anybody

22 has dealt with.

23         From the first day that he came and cooperated

24 until today, his ability to recall facts, provide

25 informatoin, willingness to meet with the government,

9

**Proceedings**

1    everything that you would want in a cooperator has been

2    above and beyond anything that I have seen.

3              From the first case that he testified in which

4    was a murder conspiracy that he told the government

5    about, exposing himself to that liability, invovled

6    conspiracy to kill Salvatore, "Sammy the Bull", Gravano.

7    The case almost entirely was investigated and prosecuted

8    based on Mr. Mangiavillano's testimony.  He was the main

9    and really only witness and the agents with his

10   information went out and corroborated everything that Mr.

11   Mangiavillano said.

12             And if you talk to the agents, they will tell

13   you that it was extraordinary, his recall and his ability

14   to dig into his memory and remember all of the facts of

15   everything that he did from going to a certain store that

16   they may have used a name at to registering at a hotel

17   under a certain name.  And every material fact that he

18   was able to come up with, the agents virtually 100

19   percent were able to go and this was in Arizona, they

20   were able to fly out there, go to the hotel, find the

21   record and corroborate what Mr. Mangiavillano said.

22             In fact, there's stories how when Mr.

23   Mangiavillano was incarcerated, the agents were able to

24   place calls to him and they would say you told us about

25   this certain business, we're trying to find it.  We don't

**Proceedings**

1  know the exact street name, can you help us through  --

2  and from thousands of miles away, Mr. Mangiavillano would

3  direct them through the streets and say you're at this

4  street, take a left there.  So that's just a little bit

5  of how hard he worked to make sure that the government

6  had everything that they needed in their arsenal to

7  prosecute these crimes.

8          And if you take that forward, even in the

9  recent months, you talk to the agents and Mr.

10  Mangiavillano will still call them and tell them about

11  tagged cars, for example and he'll say you've got to look

12  into this because I think this car may be stolen;

13  something that the agents wouldn't even ask

14  Mr. Mangiavillano about, he would offer that up and he

15  did it because I think that's an example of how he truly

16  has changed his life and put his life of crime behind

17  him, you know, to such an extent that the agents probably

18  don't konw what to do with the wealth of the information

19  because it's just coming that often and that

20  overwhelming.

21          So as I said, I think he's probably one of the

22  smartest, most hard-working cooperators that I have dealt

23  with.  The detail in owning up to his own crimes and his

24  criminal conduct has been incredible.  He's all along

25  made no excuses for what he had done and for who he was

Transcription Plus II      Rosalie Lombardi

11

**Proceedings**

1   before he came in.  In conversations that he has had with

2   the prosecutors and with the agents, you konw, he's been

3   embarrassed, he's shown contrition for who he used to be

4   and I think he's the type of person had he had better

5   influences in his life, chose a different path, he would

6   have been top of this class in school, he would have been

7   a success in any business endeavor that he would have

8   chose to get into.

9           And in the future when he has the opportunity,

10  I am confident that he will make up for that lost time

11  and respond with resounding success in whatever he does,

12  whether it's business or anything else that he chooses to

13  do.  And I think over the last three to four years since

14  he has been out and there's absolutely no transgression

15  since he's been out on his own, he's made the most of

16  that time and he will continue to do so.

17          Your Honor, he has done everything asked of him

18  and more.  Most importantly perhaps I really believe in

19  my conversations and in my dealings with

20  Mr. Mangiavillano that he has changed his life.  From

21  what I've seen, from what I have heard from the agents,

22  he's changed his life such that he will not go back to

23  what he was before.  His crimnal life has been over for

24  some time now and I believe, your Honor, today he stands

25  before you as a person that I personally look forward to

12

**Proceedings**

1   hearing about what he does in the future because I think

2   there's so much potential there when he puts his mind to

3   it on the right side of the law that it's going to be

4   interesting and exiting to hear about where he goes from

5   here.

6           And I am confident in his abilities to be a

7   productive member of society.  I'm confident in his

8   abilities to follow through on his commitment to live a

9   law abiding life as he has done over the last several

10  years since he has been out of prison and I believe,

11  your Honor, that when he says as I believe he will tell

12  you, that he will never darken the hallways of this court

13  or any other, I think he is someone that you can take him

14  at his word.  Thank you, Judge.

15          THE COURT:  Do you wish to speak?

16          THE DEFENDANT:  Yes.  First I would like to

17  thank Mr. Andres for the kind letter and Joey Lipton for

18  the kind words.  I apologize for being in front of you.

19  I am totally embarrassed of being here.

20          On June of 2002 or around June of 2002,

21  your Honor, I decided that I didn't want to live the life

22  that I was living and I told my attorney that I was

23  willing to speak to the US attorney.  And I did that.

24  From that day on when I left there I knew I could never

25  go back to the life that I lived.

13

**Proceedings**

1        I had the support of my family to do it.  I

2   couldn't do it prior unless I had their support to do it.

3   I wouldn't leave them in the street, being in danger.  So

4   I had to get their support prior.  My family supported me

5   through the whole thing.  My fahter put up his house for

6   my bond and I wasn't going to his home.  I was going to

7   the WITSEC.  He didn't know where I was going.

8           I've been out of the street three and a half

9   years now.  I have not gotten in any kind of trouble at

10  all.  I have had experiences where I could speak to

11  normal people while I was at WITSEC.  No more either

12  associates of organized crime or members of organized

13  crime or anyone that didn't know my history.  During that

14  time, I got to learn a lot about being a normal person

15  and I am now a normal person.  I am going to be a normal

16  person for the rest of my life.

17          Ultimately, you will cause judgment on me today

18  and whatever it is, I will accept it but no matter what

19  it is, I am still going to continue to be a normal

20  person.

21          THE COURT:  All right.

22          THE DEFENDANT:  And again, I want to apologize

23  for being here in front of your Honor.

24          MR. ANDRES:  Judge, if I could just add, I am

25  sorry, obviously your Honor is aware that we can't make

14

## Proceedings

1    most of the cases that we do here in federal court

2    without the -- without having cooperating witnesses come

3    forward.  And it is somewhat ironic that the guidelines

4    and the sentence that Mr. Mangiavillano would have been

5    facing had he not cooperated, he would have already

6    completed that sentence.  So the additional time that he

7    is now facing is based as I said earlier, entirely on his

8    own credible acknolwedgement of these additional murder

9    conspoiracies which he came forward, disclosed to the

10   government, were investigated and for which other

11   individuals have now been prosecuted and incarcerated.

12           THE COURT:  All right.  In light of the

13   defendant's extraodrinary cooperation, I am going to

14   grant the government's motion for a downward departure.

15   I am sentencing the defendant to the custody of the

16   attorney general for a period of time served, a period of

17   three years on supervised release and a unsupervised

18   supervised release, if that's possible.  And a special

19   assessment of -- how much are we talking about?  How many

20   counts?

21           MR. PASTER:  Four or five.

22           MR. ANDRES:  Five.

23           THE COURT:  Five.  And some of these are --

24   well and a special assessment of $400 because some of

25   these carry only $50 special assessments.  Okay.

15

## Proceedings

1     MR. PASTER:  Your Honor, if I may just be heard

2   for one bnrief moment, just following up on something

3   that Mr. Andres -- about Mr. Mangiavillano's intelligence

4   and personality, I would like the record to reflect my

5   personal gratitude to the agents Otto and Peale and to

6   the assistants, Mr. Andres and Mr. Lipton, because I have

7   had -- I've had a number of clients cooperate with the

8   government and I feel that this cooperation was

9   particularly fruitful because the right agents and the

10   right assistants found the right defendant and the

11   combination is what made it work so well.

12         THE COURT:  All right.

13         MR. ANDRES:  Your Honor, I think restitution is

14   mandatory, as well.  It's listed in the PSR in paragraph

15   168.  I would note that -- I'm sorry, 186 -- other

16   defendants have also been convicted for the same crime,

17   so that any restitution should be jointly and severable

18   with respect to the other defendants.  But in 186, it

19   lists the amount of $84,176.73 and in 187 it lists $888

20   --- I'm sorry, $888,472.

21         THE COURT:  Well at the moment I don't know

22   that he has any ability to pay restitution.  Well I will

23   order that restitution be paid in those amounts specified

24   in 186 and 87 at the rate of five percent of his net

25   income.

16

**Proceedings**

1          MR. ANDRES:  The government moves to dismiss

2    any outstanding counts, Judge.

3          THE COURT:  Pardon me?  Yes.

4          MR. PASTER:  Thank you, Judge.

5          MR. ANDRES:  The government moves to dismiss

6    any outstanding counts.

7          THE COURT:  They're dismissed.

8          MR. ANDRES:  Thank you, Judge.

9          THE CLERK:  The defendant has a right to an

10   appeal.

11          THE COURT:  You have the right to an appeal if

12   I have made any legal error in imposing sentence.  If you

13   can't afford to pay the filing fee, I would allow you to

14   file a notice of appeal without paying the filing fee.

15   Do you understand what I have just said to you?

16          THE DEFENDANT:  Thank you, your Honor.

17          MR. ANDRES:  Thank you, Judge.

18               (Matter concluded)

19                    -o0o-

20

21

22

23

24

25

17

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **2nd** day of **January** , 2010.


Rosalie Lombardi
Transcription Plus II